ACCEPTED
01-15-00141-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/29/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00141-CV

_____

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/28/2015 4:56:19 PM
CHRISTOPHER A. PRINE
Clerk

_____

MADHUSUDAN SHAH
APPELLANT

FILED IN
1st COURT OF APPEALS
HOUSTON, TX
June 29, 2015
CHRISTOPHER A. PRINE,
CLERK

v.

SODEXO SERVICES OF TEXAS LIMITED PARTNERSHIP
APPELLEE

On appeal from the 55th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2014-20678

_____

FIRST AMENDED BRIEF OF APPELLANT MADHUSUDAN SHAH

_____

ORAL ARGUMENT REQUESTED

Kenneth R. Baird
Lead Counsel for Appellant
Texas Bar No. 24036172
The Baird Law Firm
2323 South Voss Road, Suite 325
(713)783-1113
(281)677-4227 (facsimile)
bairdlawfirm@hotmail.com

Attorney for Madhusudan Shah

## IDENTITY OF PARTIES AND COUNSEL

**Trial Counsel for Plaintiff/Appellant Madhusudan Shah**

Arshad A. Ramji (Lead Counsel)
Texas Bar No. 24045209
Ramji & Associates, P.C.
2920 Virginia Street
Houston, Texas 77098
(713)888-8888
(866)672-3372 (facsimile)
ramji@ramjilaw.com

Kenneth R. Baird (Co-Counsel)
Texas Bar No. 24036172
The Baird Law Firm
2323 South Voss Road, Suite 325
Houston, Texas 77057
(713)783-1113
(281)677-4227 (facsimile)
bairdlawfirm@hotmail.com

**Appellate Counsel for Plaintiff/Appellant Madhusudan Shah**

Kenneth R. Baird
Texas Bar No. 24036172
The Baird Law Firm
2323 South Voss Road, Suite 325
Houston, Texas 77057
(713)783-1113
(281)677-4227 (facsimile)
bairdlawfirm@hotmail.com

**Trial and Appellate Counsel for Defendant/Appellee Sodexo Services of Texas Limited Partnership**

Nelson D. Skyler
Texas Bar No. 00784982

nskyler@brownsims.com
Tarush R. Anand
Texas Bar No. 24055103
Neal A. Hoffman
Texas Bar No. 24069936
nhoffman@brownsims.com
1177 West Loop South, 10th Floor
Houston, Texas 77027
(713)629-1580
(713)629-5027 (facsimile)

NO. 01-15-00141-CV
_____

## TABLE OF CONTENTS

                                                                  **Page**

Identity of Parties and Counsel ......................................... i

Table of Contents ............................................................ iii

Index of Authorities ........................................................ v

Statement of the Case ....................................................... 1

Issues Presented .............................................................. 3

Statement of Facts .......................................................... 4

Summary of Argument ........................................................ 8

Argument ....................................................................... 14

    I.     Elements of Health Care Liability Claims ..... 14

    II.    The Court Should Apply a De Novo Standard
           Of Review ................................................... 15

    III.   Reversal of the Trial Court's Decision is
           Mandated Under *Ross* as Shah's Tort Claims
           Lack the Requisite Substantive Nexus With
           Health Care .............................................. 17

         A.   The *Ross* Decision ................................... 17

         B.   *Ross* Mandates Reversal of the Trial
             Court's Decision...................................... 22

         C.   *Ross*' Progeny Also Supports Reversal
             of the Trial Court's Decision ................. 32

IV.     Pre-*Ross* Cases Remain Valid as Persuasive Authorities & Illustrate the Fallacies Associated With Trying to Label Shah's Claims as Health Care Liability Claims .….....35

     A.    *Riverside General Hospital* ....................35

     B.    *Riverside General Hospital's* Logic.........36
         Was Extended in *Gonzalez*

     C.    The *Twilley* Decision.….............…37

     D.    The *Dewey* Decision ....................….40

     E.    The Pre-*Ross* Decisions Support Reversal of the Trial Court's Decision .................................…41

V.     Requiring an Expert Report Would Engraft a Superfluous and Pointless Requirement Onto Shah's Negligence Claim .........................42

VI.    In the Alternative, Sodexo Should be Equitably Estopped From Seeking Dismissal of Shah's Claims .…….….....…......…...45

Prayer ........................................................50

Certificate of Service ....................…….........51

Certificate of Compliance ...............…........52

Appendix .................................…........53

**INDEX OF AUTHORITIES**

**Page(s)**

*Brazos Presbyterian Homes, Inc. v. Rodriguez*, No. 14-14-00479-CV, 2015 Texas App. LEXIS 5374 (Tex. App. --- Houston [14th Dist.] 5/28/15, no pet. h.)........33, 34

*Buck v. Blum*, 130 S.W.3d 285 (Tex. App. --- Houston [14th Dist.] 2004, no pet.).......................16

*Columbia Med. Ctr. of Denton Subsidiary, L.P. v. Braudrick*, No. 02-13-00339-CV, 2014 Tex. App. LEXIS 5536 (Tex. App. --- Fort Worth 2014, pet. filed) (memorandum opinion)..............14

*DHS Mgmt. Services, Inc. v. Castro*, 435 S.W.3d 919 (Tex. App. --- Dallas 2014, no pet.)..........................................15

*Gonzalez v. Diversicare Leasing Corp.*, No. 01-13-00108-CV, 2014 Tex. App. LEXIS 10576 (Tex. App. --- Houston [1st Dist.] 2014, pet. filed)..................................36, 37, 41

*Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d (Tex. App. --- Texarkana 2013, pet. denied)...................................37, 38, 39, 40, 41, 43

*Holland v. Friedman & Feiger*, No. 05-12-01714-CV, 2014 Tex. App. LEXIS 12892 (Tex. App. --- Dallas 2014, no pet. h.)............46

**Page(s)**

*Loaisiga v. Cerda,*
   379 S.W.3d 248 (Tex. 2012).....................14, 16,
                                                  18, 23


*Lance Thai Tran, DDS, P.A. v. Chavez,*
   No. 14-14-00318-CV, 2015 Tex. App. LEXIS
   4886 (Tex. App. --- Houston [14th Dist.]
   5/14/15, no pet. h.) ............................33


*Lout v. Methodist Hosp.,*
   No. 14-04-00302, CV, 2015 Tex. App. LEXIS
   6272 (Tex. App. --- Houston [14th Dist.]
   6/23/15, no pet. h.)............................33


*Marks v. St. Luke's Episcopal Hosp.,*
   319 S.W.3d 658 (Tex. 2010).........................15


*MCI Sales & Services, Inc. v. Hinton,*
      329 S.W.3d 475 (Tex. 2010), *cert. denied,*
      131 S.Ct. 2903, 179 L. Ed. 2d 1246, 2011
      U.S.LEXIS 3990, 79 U.S.L.W. (2011)...............15


*Methodist Healthcare System of San Antonio*
   *v. Dewey,* 423 S.W.3d 516 (Tex. App. ---
   San Antonio 2014, pet. filed).....................40,
                                                  41, 43


*McIntyre v. Ramirez,*
      109 S.W.3d 741 (Tex. 2003).......................15


*Ross v. St. Luke's Episcopal Hospital,*
   No. 13-0439, 2015 Tex. LEXIS 361 (Tex.
   5/1/15) (publication status pending)............*passim*


*Sherman v. HealthSouth Specialty Hospital, Inc.,*
   397 S.W.3d 869 (Tex. App. --- Dallas 2013, pet.
   denied)............................................15

**Page(s)**

*Texas Dept. of Transportation v. Needham*,
   82 S.W.3d 314 (Tex. 2002)...........................15

*Tex. Lottery Comm'n v. First State Bank of*
   *DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)...........16

*Texas West Oaks Hospital, L.P. v. Williams*,
   371 S.W.3d 171 (Tex. 2012).....................*passim*

*Union Carbide v. Synatzske*,
   438 S.W.3d 39 (Tex. 2014)..........................16

*Williams v. County of Dallas*,
      194 S.W.3d 29 (Tex. App. --- Dallas 2006,
      pet. denied)...................................46

*Williams v. Riverside General Hospital, Inc.*,
   No. 01-13-00335-CV, 2014 Tex. App. LEXIS 9681
   (Tex. App. --- Houston [1st Dist.] 2014, no pet.
   h.) (memorandum opinion).......................*passim*

Valley Regional Medical Ctr. v. Camacho,
   No. 13-14-00004-CV, 2015 Tex. App. LEXIS
   4967 (Tex. App. --- Corpus Christi 5/14/15,
   no pet. h.)........................................33

*Yamada v. Friend*,
   335 S.W.3d 192 (Tex. 2010).........................15

**Statutes & Rules**

TEX. CIV. PRAC. & REM. CODE § 74.001, et. Seq.........*passim*

TEX. CIV. PRAC. & REM. CODE § 74.001(13) .................14

TEX. R. CIV. P. 194.2(c) .........................3, 12, 45,
                                                46, 48, 49

TEX. R. CIV. P. 193.6(a) ..........................46, 48

## STATEMENT OF THE CASE

On April 14, 2014, Madhusudan Shah[1] commenced the underlying litigation in the District Courts of Harris County.[2]  Shah's claims sounded in common law negligence and related to personal injuries sustained on August 1, 2013 when he was struck by a beverage cart operated by Sodexo Services of Texas Limited Partnership[3] while Shah was on the premises of non-party Ben Taub Hospital.[4] Sodexo filed its Original Answer on May 23, 2015.[5]

On December 19, 2014, Sodexo filed its Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report.[6]  Shah filed a timely response opposing the Motion to Dismiss[7] and reply and sur-reply briefs were also filed by the parties.[8]  An oral hearing

---

[1] Hereinafter "Shah"
[2] Clerk's Record (hereinafter "CR") 4-8.
[3] Hereinafter "Sodexo"
[4] Id.
[5] CR 18-20.  Although Shah originally named five separate defendants in the suit, Shah later non-suited the other defendants after learning that Sodexo was the responsible party. *See* CR 27-28.
[6] CR 158-281.  Hereinafter, Shah refers to the Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report as "Motion to Dismiss."
[7] CR 284-314.
[8] CR 386-395 & 400-402.

on the Motion to Dismiss was conducted by the 55th Judicial District Court on January 12, 2015.[9]

On January 16, 2015, the 55th Judicial District Court of Harris County entered an order granting Sodexo's Motion to Dismiss.[10] Shah filed a timely Notice of Appeal with the Harris County District Clerk's Office on February 12, 2015.[11]

---

[9] CR 282-283. The oral hearing on the Motion to Dismiss was conducted without a record.

[10] CR 413. Although there was initially some uncertainty as to whether or not the 55th Judicial District Court's order was an appealable final judgment as it left unresolved Sodexo's claim for attorney's fees and costs under Chapter 74 of the Texas Civil Practice & Remedies Code, Sodexo later waived its claim for attorney's fees and costs and the parties submitted a joint stipulation to the Honorable Court of Appeals on March 19, 2015 stipulating that 55th Judicial District Court's Order was a final judgment and requesting that the Honorable Court of Appeals resolve the substantive legal issues raised by this appeal. A copy of the stipulation is included in the Appendix.

[11] CR 416 to 419.

_____

## ISSUES PRESENTED

(1) Under the Supreme Court's recent opinion in *Ross*,[12] including the seven non-exclusive factors identified by the Supreme Court as guideposts for the analysis, do Shah's tort claims have a substantive relationship with the provision of medical or health care such that they can be properly classified as health care liability claims under Chapter 74 of the Texas Civil Practice & Remedies Code?

(2) Would requiring Shah to obtain an expert report add anything of substance to Shah's claims or would it merely provide Sodexo with an unwarranted procedural advantage under the guise of regulating health care?

(3) Can a defendant avoid its obligation to disclose its "basic assertions" under Rule 194.2(c) by waiting until after a plaintiff's one-hundred and twenty day deadline to serve a Chapter 74 report expires before it reveals that it may elect to seek dismissal of the plaintiff's claims for failure to satisfy the expert report requirement?

---

[12] *Ross v. St. Luke's Episcopal Hospital*, No. 13-0439, 2015 Tex. LEXIS 361 (Tex. 2015) (publication status pending)

_____

## STATEMENT OF FACTS

On or about August 1, 2013, Shah was a resident at Ben Taub Hospital for cancer treatment.[13] As he was attempting to retrieve a cup of coffee from a vending machine, Shah was struck by a beverage cart which was operated by an employee of Sodexo.[14] Shah sustained severe and disabling injuries to his knee, back, stomach, feet, and body general as a result of being knocked to the ground by the beverage cart.[15]

The gravamen of Shah's negligence claim is that Sodexo's employee breached his or her duty to operate the beverage cart with reasonable care.[16] In particular, Shah alleges that the employee who was responsible for operating the cart was negligent in not watching where he or she was pushing the cart, pushing the cart at an unsafe rate of speed, not keeping a proper lookout, not paying attention, not detecting Shah's obvious presence

_____

[13] CR 4.
[14] *Id.*
[15] *Id.*
[16] CR 5.

near the vending machine, and generally operating the cart in a random, haphazard, and careless manner inconsistent with his or her duty of reasonable care.[17] Shah's claims relate to the proper operation of a beverage cart and do not encompass any medical issues.

Sodexo's Motion to Dismiss was predicated upon the position that Shah's claims are health care liability claims within the meaning of Chapter 74 of the Texas Civil Practice & Remedies Code and that dismissal of the claims was appropriate since Shah failed to file a written expert report within one-hundred and twenty days from the date Sodexo filed its answer.[18] At the ensuing oral hearing on January 16, 2015, the parties and the trial court discussed the proper interpretation of the *Texas West Oaks Hospital*[19] decision as well as various intermediate appellate court decisions relevant to the nature and scope of the Supreme Court's decision.

---

[17] *Id.*

[18] *See Generally* CR 158 to 281. Shah concedes that he did not file an expert report within the one-hundred and twenty day period but contends that no such report was necessary as his claims do not fall within the purview of Chapter 74.

[19] *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012).

At the time the trial court heard oral argument on Sodexo's Motion to Dismiss, the *Ross* decision was not available as a guide as the case was still pending before the Texas Supreme Court.[20] While Shah disagrees with the trial court's analysis of the issues before it under the state of the law at that time, the legal arguments presented to the trial court are largely moot as *Ross* clarified the uncertain nature of the law under *Texas West Oaks Hospital* which existed at the time the trial court rendered its decision. As a result, Shah focuses his Amended Brief on *Ross'* holding that a substantive nexus must exist between a claim based upon safety standards and the provision of health care before a tort claim can be properly classified as a health care liability claim under Chapter 74 of the Texas Civil Practice & Remedies Code.[21] As no such substantive relationship exists between Shah's tort claims and the

---

[20] The *Ross* decision was issued by the Texas Supreme Court on May 1, 2015.

[21] On May 29, 2015, the Court granted Shah leave to file an amended brief in light of the fact that the Ross decision was not issued until after Shah's original brief was filed. A copy of the Order is included in the Appendix as Tab C.

provision of health care services, the Court should reverse the trial court's ruling on Sodexo's Motion to Dismiss and remand this matter to the trial court for further proceedings.

_____

## SUMMARY OF ARGUMENT

Under *Ross*, a tort claim predicated upon alleged departures from safety standards must exhibit a substantive nexus with the provision of health care services before it can be labeled a health care liability claim under Chapter 74 of the Texas Civil Practice & Remedies Code. Although the question of whether or not such a substantive relationship exists is a decision to be made on a case by case basis, the Texas Supreme Court has articulated a list of seven non-exclusive factors which may be used as part of the analysis. Before the factors are even applied, it is clear from the nature of Shah's tort claims that the operation of a beverage cart falls far outside the reach of Chapter 74. Shah's tort claims are grounded in the common law duty of reasonable care and the question of whether or not Sodexo's employee operated the cart in a reasonable fashion can be resolved without reference to any medical standards.

_____

An application of the seven *Ross* factors reinforces the conclusion that Shah's claims are not health care liability claims as they lack a substantive nexus with the provision of health care services and at best have a marginal and insignificant relationship to the cancer treatment Shah was receiving from non-party Ben Taub Hospital when the underlying accident occurred. While the application of one of the factors is unclear, a reasoned consideration of the other six indicate that the requisite substantive relationship to health care is lacking. As a result, the Court should reverse the trial court's ruling on Sodexo's Motion to Dismiss.

The four intermediate appellate decisions which have had an opportunity to analyze and apply *Ross* further militate in favor of the conclusion that a substantive relationship between Shah's tort claims and health care is lacking. All four decisions were decided in favor of plaintiffs who argued that Chapter 74 was inapplicable to their respective tort claims. As any factual or legal distinctions between those decisions and the case *sub*

*judice* would be nothing more than arbitrary distinctions without a difference, it is clear that Shah's tort claims are not health care liability claims within the meaning of Chapter 74 of the Texas Civil Practice & Remedies Code.

Although they may be characterized as non-binding authorities due to the fact that they were decided before the announcement of the substantive relationship standard in *Ross*, a series of intermediate appellate court decisions remain persuasive as they highlight the logical fallacy which would result in the event that Shah's claims are forced under the rubric of Chapter 74. As there is no substantive difference between the injury-producing activity in those cases and this matter, it is clear that Shah's tort claims do not satisfy the statutory definition of a health care liability claim regardless of whether that definition is construed under *Ross* or pre-*Ross* standards.

Regardless of how *Ross* is interpreted, the Court should decline Sodexo's invitation to engraft a

superfluous and unnecessary procedural requirement onto Shah's negligence claim under the guise of regulating health care. Assuming for the sake of argument that Shah could locate a physician or other type of health care provider who had the requisite expertise to address standard of care issues relative to the operation of a beverage cart, the safe operation of a beverage cart does not implicate medical or health care standards. Infusing expert opinions from a physician or other health care provider into the midst of this case would not benefit the trier of fact or otherwise add anything of substance to the litigation. While requiring Shah to produce an expert report would provide Sodexo with an unwarranted tactical advantage, the purpose of Chapter 74 is not to erect procedural hurdles for plaintiffs in non-medical cases.

In the alternative and in the unlikely event that the Court believes that Chapter 74's expert report requirement is applicable to Shah's claims, the Court should apply the doctrine of equitable estoppel to

prevent Sodexo from seeking dismissal of Shah's claims due to the fact that Sodexo failed to provide a full disclosure of its "basic assertions" under Rule 194.2(c). Sodexo's basic assertions at the time it responded to Shah's Requests for Disclosure on July 23, 2014[22] should have included the fact that it might seek dismissal of Shah's claims for failure to comply with Chapter 74's expert report requirement. However, Sodexo failed to include any reference to Chapter 74 in its response to 194.2(c)[23] and instead interjected Chapter 74 into the case for the first time when the Motion to Dismiss was filed on December 19, 2014.[24] To fail to invoke the doctrine of equitable estoppel under these circumstances would effectively convert Chapter 74 into a trap door that a defendant can spring open at a strategic time in order to catch an unsuspecting plaintiff who has no knowledge that an expert report is even required. As such an outcome does not further the interests of

---

[22] CR 342.
[23] CR 343.
[24] *See Generally* CR 158-281.

justice, the application of equitable estoppel mandates the reversal of the trial court's decision on Sodexo's Motion to Dismiss.

_____

**ARGUMENT**

## I. Elements of Health Care Liability Claims

Chapter 74 of the Texas Civil Practice & Remedies Code defines a health care liability claim as follows:

> "A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or heath care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.[25]

Based upon the statutory definition, a health care liability claim has three distinct elements: (1) the defendant is health care provider; (2) the claim at issue concerns treatment, lack of treatment, or other claimed departure from accepted standards of medical care; and (3) the defendant's alleged act or omission proximately caused the injury.[26]

---

[25] *See* TEX. CIV. PRAC. & REM. CODE § 74.001(13).
[26] *See Loaisiga*, 379 S.W.3d at 255; *Columbia Medical Ctr. of Denton Subsidiary, L.P. v. Braudrick*, No. 02-13-00339-CV, 2014 Tex. App. LEXIS 5536, *3 (Tex. App. --- Fort Worth 2014, pet. filed) (memorandum opinion).

In order to determine if a claim satisfies the requisite elements of a health care liability claim, the nature of the claim being asserted must be examined with emphasis on the essence of the claim, the alleged wrongful conduct, and the duties allegedly breached.[27]

## II. The Court Should Apply a *De Novo* Standard of Review

The question of whether or not Appellant's claims fall within the scope of Chapter 74 of the Texas Civil Practice & Remedies Code is a question of statutory interpretation which triggers a *de novo* review.[28] In reviewing a statute, the goal is to "determine and give effect to the Legislature's intent" and the touchstone of the analysis should be the "plain and common meaning of the statute's words."[29] In such an analysis, statutory

---

[27] *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *DHS Mgmt. Servs, Inc. v. Castro*, 435 S.W.3d 919, 921 (Tex. App. --- Dallas 2014, no pet.); *Sherman v. HealthSouth Specialty Hospital, Inc.*, 397 S.W.3d 869, 702 (Tex. App. --- Dallas 2013, pet. denied)

[28] *See Texas West Oaks Hospital*, 371 S.W.3d at 177; *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658, 663 (Tex. 2010); *MCI Sales & Services, Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010), *cert. denied*, 179 L. Ed. 2d 1246, 2011 U.S. LEXIS 3990, 79 U.S.L.W. (2011.

[29] *See Texas Dept. of Transportation v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003).

language should be afforded its plain and common meaning unless statutorily defined otherwise, a different meaning is apparent from the context, or a certain construction would lead to absurd or nonsensical results.[30] Ascertaining legislative intent requires reading the statute as a whole with all of its language placed in the proper context.[31]

When determining whether or not a claimant has asserted a health care liability claim, an appellate court should consider the entire record before it, including the pleadings, motions and responses, and relevant evidence properly admitted at the trial court level.[32]

---

[30] *See Ross*, 2015 Tex. LEXIS 361 at *8; *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).
[31] *See Ross*, 2015 Tex. LEXIS 361 at *8; *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014).
[32] *See Texas West Oaks Hospital*, 371 S.W.3d at 177; *Loaisiga*, 349 S.W.3d at 258; *Riverside General Hospital*, 2014 Tex. App. LEXIS 9681 at *5; *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App. --- Houston [14th Dist.] 2004, no pet.)

_____

**III. Reversal of the Trial Court's Decision is Mandated Under *Ross* as Shah's Tort Claims Lack the Requisite Substantive Nexus With Health Care**

**A. The *Ross* Decision**

Lezlea Ross was a visitor at St. Luke's Episcopal Hospital[33] As Ross was walking through the lobby in order to exit the hospital, she slipped and fell on the floor which was in the process of being cleaned and buffed.[34] Ross subsequently filed suit against St. Luke's and the cleaning contractor for the hospital on a premises liability theory.[35]

After the trial court and the Fourteenth Court of Appeals labeled Ross' claims as health care liability claims, the Texas Supreme Court had an opportunity to clarify the confusion created by the *Texas West Oaks Hospital* decision concerning the proper standard for defining health care liability claims. After reviewing Chapter 74' statutory definition for health care liability claims as well as the *Texas West Oaks Hospital*

---

[33] Hereinafter "St. Luke's"
[34] *See Ross*, 2015 Tex. LEXIS 361 at *2.
[35] *Id.*

and *Loaisiga*[36] decisions,[37] the Court announced a new standard for distinguishing between health care liability claims and ordinary tort claims that happen to occur on the premises of a health care provider.

The court prefaced its holding with three several key principles related to the purpose of Chapter 74 as well as its proper application. First, the court expanded the prior holding in *Loasigia* to safety-based claims[38] by noting that a claim based upon alleged departure from safety does not fall underneath Chapter 74's umbrella merely because the underlying injury took place on the premises of a health care provider or because the defendant is a health care provider.[39] The court also noted that a health care provider may assume tort duties related to maintenance or generalized safety for its patrons which are indistinguishable from corresponding duties acquired by non-medical business owners.[40]

---

[36] *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).
[37] *See Ross*, 2015 Tex. LEXIS 361 at *7 to 14.
[38] *Loaisiga* was decided in the context of an intentional tort claim where a patient was assaulted as opposed to a negligence claim based on alleged departures from safety standards.
[39] *See Ross*, 2015 Tex. LEXIS at *14.
[40] *Id.* at *14-15.

_____

Finally, the court recognized that the text of Chapter 74 does not specifically state that a safety-based tort claim falls within its domain only if the underlying claim has some relationship to the provision of health care services. However, the court found that such a relationship must have been intended by the legislature given other expressions of legislative intent in the statute coupled with the context in which "safety" appears in the statute.[41]

Perhaps the most important observation made by the court in its review of the statutory language is the effect the statute would have if all safety-based claims, regardless of their relationship to traditional health care, were forced into the realm of Chapter 74. As the court eloquently stated, nonsensical results would occur if all plaintiffs who sue health care providers were required to obtain an expert report regardless of the nature of the underlying claim in dispute:

> "the broad meaning of 'safety' would afford defendant health care providers a special procedural advantage in the guise of requiring

_____

[41] *Id.* at *15.

plaintiffs to file expert reports in their suits regardless of whether their cause of action implicated the provision of medical or health care. We do not believe the Legislature intended the statue to have such arbitrary results."[42]

Based upon the aforementioned reasoning, the court clarified the law as to health care liability claims by holding that there must be a substantive nexus between the safety standards allegedly breached and the provision of health care before a safety-based tort claim qualifies as a health care liability claim under Chapter 74.[43] The court clarified that the "pivotal issue" in a safety based tort claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including the duties to provide for patient safety.[44]

As a guide in determining whether or not the requisite substantive nexus exists, the court articulated a list of non-exclusive factors which serve as guideposts

---

[42] *Id.* at *16-17.
[43] *Id.* at *17-18.
[44] *Id.* at *18-19.

_____

in distinguishing between health care liability claims

and ordinary tort claims:

(1) Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm?

(2) Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated?

(3) At the time of the injury, was the claimant in the process of seeking or receiving health care?

(4) At the time of the injury was the claimant providing or assisting in providing health care?

(5) Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider?

(6) If an instrumentality was involved in the defendant's negligence, was it a type used in providing health care?

(7) Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements

_____

set for health care providers by governmental or accrediting agencies?[45]

After finding that none of the seven factors supported any relationship between a slip and fall accident in the lobby of a hospital and the hospital's provision of medical services, the court reversed the judgment of the court of appeals and remanded the case back to the trial court.[46]

### B. *Ross* Mandates Reversal of the Trial Court's Decision

Assuming for the sake of argument that there is any relationship at all between a patient being struck by a beverage cart while attempting to retrieve a cup of coffee and the provision of health care services, the relationship falls exceedingly short of the substantive nexus required under *Ross*. Even before the seven factors which were provided by the court as guides in *Ross* are examined, it is clear from a simple review of the facts which engendered Shah's tort claims that there is no meaningful relationship between Shah's injury and the

---

[45] *Id.* at *19-20.
[46] *Id.* at *20-21.

provision of health care services. While Shah was injured while he was physically on the premises of non-party Ben Taub Hospital, it was mere happenstance that the beverage cart was being pushed through a hospital as opposed to a non-medical establishment and no legitimate argument can be advanced that the operation of a beverage cart has even a tangential connection to the provision of health care services. Furthermore, *Loaisiga* and *Ross* make it clear that the situs of injury itself is a non-factor in deciding how to classify Shah's tort claims.

Applying the seven factors identified in Ross further reinforces the conclusion that there is no substantive relationship between being struck by a beverage cart and health care. While the application of one factor is unclear, the remaining six considerations all militate in favor of Shah's position that a meaningful connection between his tort claims and health care is lacking.

Arguably, Shah was in a "place where patients might be during the time they were receiving care"[47] when he

---

[47] *Id.* at *19

was obtaining a cup of coffee as patients can reasonably be expected to walk into common areas of the hospital. However, the latter part of the second factor militates against classifying Shah's claims as Sodexo had no duty to protect Shah based upon his receipt of special medical care when the accident in question occurred. While Sodexo had a common law tort duty to operate the beverage cart with reasonable care so as to protect Shah from generalized harm, this duty had nothing to do with Shah's medical status or the cancer treatment he was receiving from non-party Ben Taub Hospital. "Harm" as used by the court in *Ross* has to refer to medical-based harms for the factor to have any usefulness and it is clear that Sodexo was not protecting Shah from any type of medical-based harm by pushing a beverage cart through the hallways of a hospital. Since the application of the second factor cuts both ways and is inconclusive, it has no impact on the ultimate question of how Shah's tort claims should classified.

A reasoned application of the remaining six factors demonstrate that there is no substantive relationship between the safety standards breached by Sodexo in connection with its allegedly negligent operation of the beverage cart and the provision of health care services. As to the first factor, Sodexo's alleged negligence did not occur in the course of Sodexo performing tasks which had the purpose of protecting Shah from harm. Once again, "harm" should be construed as medical-based harm for this factor to have any usefulness and Sodexo's operation of a beverage cart in the hallways and common areas of Ben Taub Hospital clearly was not an activity intended to protect Shah from medical-based harm. While the doctors who were treating Shah for cancer had a duty to protect Shah from medical-based harms when administering treatment, no similar obligation arose in the lobby near the vending machine where Sodexo was operating the beverage cart. Furthermore, the common law duty to operate a beverage cart with reasonable care is entirely non-medical in nature and is indistinguishable from the

_____

tort duty imposed on the operators of beverage carts at sporting events or other non-medical settings. Ross was clear that such duties, which are indistinguishable from the duties placed on non-medical business owners, do not create a health care liability claim.[48]

Shah anticipates that Sodexo will argue that its role in delivering food and drink items to patients creates a duty to protect Shah from injury which allows the second factor support its position. However, such an argument misconstrues the second factor and the spirt of the holding in *Ross*. While the transport of food and drink through a hospital may spawn a tangential connection to the health care services which are delivered by the hospital to patients, it does not create the type of "substantive nexus" between Shah's underlying accident and the provision of health care services which is necessary under *Ross* to create a health care liability claim. Furthermore, "harm" in the context of the first factor has to be interpreted as "medical-based harm" for

_____

[48] *Id.* at *14-15.

_____

the *Ross* analysis to have any significance. Otherwise, any duty to protect against any type of patient harm would create a health care liability claim which clearly was not the intent of the Texas Supreme Court.

Guarding against the risk of injury created by the unsafe operation of a beverage cart while a patient is in a common area of the hospital is a generalized tort obligation that is entirely non-medical in nature and the existence of the duty has nothing to do with Shah's status as a cancer patient at Ben Taub Hospital. Sodexo's duty to Shah is analogous to the duty of St. Luke's Hospital to buff and clean floors in a manner which prevented visitors from slipping and falling in the hospital's lobby. However, neither tort duty is directed towards protecting patients from medical-based harms and does not create a substantive nexus with health care merely because the duty is carried out the physical premises of a hospital.

_____

The third factor and fourth factors also support reversal of the trial court's decision as Shah was not the process of seeking or receiving health care when he walked to vending machine in order to obtain a copy of coffee nor was he providing or assisting in the provision of health care when he was struck by the beverage cart in front of the vending machine. To the contrary, the underlying accident occurred while Shah was taking a break from medical treatment in order to obtain a beverage in a common area of the hospital.

Shah again anticipates that Sodexo will attempt to misconstrue the third factor as part of a disingenuous attempt to force Shah's non-medical claims into the realm of Chapter 74. While patients might be reasonably expected to walk into the common areas of a hospital while waiting for an appointment with a doctor or while taking a break from treatment, Shah's decision to obtain a cup of coffee from a vending machine in the hallway was not made in furtherance of his cancer treatment. The fact that Sodexo pushed beverage carts through the common

areas and that Sodexo was charged with distributing food and drink items throughout the hospital does not make the retrieval of a cup of coffee a medical event and no health care services were being administered by anyone at the time of Shah's injury.

The fifth factor also points in Shah's direction as the alleged negligence on Sodexo's part is not based on safety standards arising from professional duties owed by Sodexo to a patient. While Sodexo did have an obligation to adhere to certain safety standards while operating the beverage cart, the applicable standards flow from the common law duty of reasonable care and have no connection whatsoever to medical treatment. Even more importantly, the safety standards applicable to the safe operation of a beverage cart do not implicate professional medical judgment and can be resolved by the trier of fact without resort to medical or health care standards.

Someone pushing a beverage cart through a hotel, an office building, or at a sports stadium would have the

same "professional duty" as Sodexo and the operation of a beverage cart in a medical or a non-medical setting does not give rise to professional duties which are in anyway related to the provision of health care. The professional duties assumed by Sodexo were entirely non-medical in nature and are functionally distinct from the professional obligation a physician owes a patient. The fact that Sodexo's duties happened to be carried out while it was transporting food and drink through a hospital is irrelevant as the nature of Sodexo's underlying tort duty could not possibly be further removed from medical treatment and is no different from duties acquired by vendors in non-hospital settings.

The final two factors solidify the conclusion that Shah's claims lack any meaningful connection to health care. The beverage cart, which is the instrumentality in question, is a non-medical piece of equipment which is not used to administer health care and had no relationship whatsoever to the cancer treatment Shah was receiving at Ben Taub Hospital. While Shah anticipates

that Sodexo will argue that the beverage cart is a health care instrumentality as it was used to transport food and drink throughout the hospital and therefore relates to patient nutrition, construing "instrumentality" in this manner would render the entire analysis under *Ross* obsolete as any physical item on a hospital premises would then be an "instrumentality" that supports a connection to health care. Such an arbitrary result would essentially render the "substantive nexus" requirement meaningless and make all tort claims based upon departures from safety standards health care liability claims. As this was clearly not the Supreme Court's intent in *Ross*, the Court should reject Sodexo's misplaced attempt to spin factor six in favor of a more reasoned interpretation of *Ross*.

Finally, Sodexo's alleged negligence was not in the course of Sodexo taking action to comply with safety-related requirements set for health care providers by governmental or accrediting agencies. Shah is not aware of any safety-related requirements promulgated by

governmental or accrediting agencies for the safe operation of a beverage cart and the safe operation of a beverage cart is guided solely by the common law duty of reasonable care. Shah's allegations that the operator of the beverage cart pushed the cart at an unsafe rate of speed, failed to keep a proper lookout, failed to pay attention to people in the vicinity of the cart's path, and failed to detect his obvious presence in front of the vending machine do not relate to medical standards issued by governmental or accrediting agencies. To the contrary, these alleged acts of negligence spring from the non-medical duty to push a beverage cart with reasonable care and Sodexo's negligence would not be any different if the accident in question had occurred in a non-medical setting.

## C. *Ross'* Progeny Also Supports Reversal of the Trial Court's Decision

Due to its recent issuance, only four intermediate appellate courts have had an opportunity to analyze and apply the Ross' "substantial nexus" holding. However, all four cases were decided in favor of plaintiffs who

argued that Chapter 74 was inapplicable to their claims and there is not yet a reported decision in Texas where the substantive nexus has been satisfied. These decisions involved a slip and fall in a hospital lobby,[49] an injury in an elevator at a nursing home,[50] a visitor struck by an automatic sliding door at a hospital,[51] and a slip and fall in the break room of a dental office.[52] As there is no substantive difference between being struck by a beverage cart while retrieving a cup of coffee and slipping and falling in the lobby of a hospital or dental office's break room or being injured due to an elevator or a sliding door, the outcome in the case *sub judice* should be the same as the result reached by the four

---

[49] *See Lout v. Methodist Hospital*, No. 14-04-00302-CV, 2015 Tex. App. LEXIS 6272 (Tex. App. --- Houston [14th Dist.] 6/23/15, no pet. h)

[50] *See Brazos Presbyterian Homes, Inc. v. Rodriguez*, No. 14-14-00479-CV, 2015 Tex. App. LEXIS 5374 (Tex. App. – Houston [14th Dist.] 5/28/15, no pet. h.)

[51] *See Valley Regional Medical Center v. Camacho,* No. 13-14-00004-CV, 2015 Tex. App. LEXIS 4967 (Tex. App. --- Corpus Christi 5/14/15, no pet. h.)

[52] *See Lance Thai Tran, DDS, PA v. Chavez*, No. 14-14-00318-CV, 2015 Tex. App. LEXIS 4886 (Tex. App. --- Houston [14th Dist.] 5/14/15, no pet. h.)

intermediate appellate courts which have had an opportunity to apply *Ross*.

Some of the misplaced arguments that Shah anticipates will be advanced by Sodexo were soundly rejected in *Brazos Presbyterian Homes.* While recognizing that patients may utilize an elevator in connection with their course of care at a nursing home, the court rebuffed the nursing home's contention that elevator maintenance standards are substantively related to the provision of either health care or patient safety.[53] In holding that the claims before it did not satisfy the Ross "substantive connection standard," the court also rejected the argument that the elevator was a health care instrumentality and found no evidence that the provision and maintenance of properly functioning elevators are required to comply with health care requirements set by governmental or accrediting authorities.[54] As there is no substantive difference between the safe operation of an elevator in a nursing home and the use of a beverage

---

[53] See Brazos Presbyterian Homes, 2015 Tex. App. LEXIS at *10.
[54] Id. at *12.

_____

cart in a hospital lobby, the Court should dispose of Sodexo's arguments in a similar manner.

## IV. Pre-*Ross* Cases Remain Valid as Persuasive Authorities & Illustrate the Fallacies Associated With Trying to Label Shah's Claims as Health Care Liability Claims

### A. *Riverside General Hospital*[55]

Emerlean Williams was employed by Riverside General Hospital as a nursing assistant. Williams sustained injuries in 2009 after she tripped over an extension cord and again in 2010 when she slipped and fell on a foreign substance on the floor while performing a room check.[56] On appellate review, this very Court was asked to determine whether or not Williams' claims should be classified as health care liability claims under the state of the law which predated *Ross* merely because they involved alleged safety breaches on the part of a health care provider.[57]

After reviewing various pre-*Ross* decisions, this Court found no cognizable link between the "garden

_____

[55] No. 01-13-00335-CV, 2014 Tex. App. LEXIS 9681 (Tex. App. --- Houston [1st Dist.] 2014, no pet.) (memorandum opinion).
[56] *See Riverside General Hospital*, 2014 Tex. App. LEXIS at *2.
[57] *Id. at *2-3.*

variety" slip and fall claims asserted by Williams and the provision of health care services.[58] As a result, this Court reversed the decision of the trial court dismissing Williams' claims and remanded the case for further proceedings at the trial court level.[59]

## B. Riverside General Hospital's Logic was Expanded in *Gonzalez*[60]

This Court followed the logic set forth in Riverside General Hospital to reject another misplaced argument that tort claims with no apparent connection to health care were health care liability claims under Chapter 74. Iris Gonzalez, an employee at Afton Oaks Nursing Home, was injured while leaving the building in order to move her car.[61] A co-worker had stacked empty milk crates in the dimly lit path which was used by employees to enter and exit the building and Gonzalez stumbled over the milk crates on the way to her car.[62] Gonzalez subsequently

---

[58] *Id.* at * 21-22.
[59] *Id.* at * 25.
[60] *See Gonzalez v. Diversicare Leasing Corp.*, No. 01-13-00108-CV, 2014 Tex. App. LEXIS 10576 (Tex. App. --- Houston [1st Dist.] Nov. 7, 2014, pet. filed) (per curiam)
[61] *See Gonzalez*, 2014 Tex. App. LEXIS 10576 at *1-2.
[62] *Id.* at *2.

sued Afton Oaks alleging non-subscriber negligence but her claims were dismissed by the trial court after she failed to obtain an expert report within the required one-hundred and twenty day period.[63]

In the context of a brief opinion, this Court relied on the holding in *Riverside General Hospital* to reverse the dismissal of Gonzalez's claims. Finding that the essence of her claims were indistinguishable from those presented in *Riverside General Hospital*, this Court held that liability for the placement of milk crates in a dimly lit exit should not be construed as a health care liability claim under the "safety" prong of the statutory definition.[64]

## C. The *Twilley*[65] Decision

Bobby Twilley was employed as director of plant operations for Good Shepherd Medical Center.[66] In 2009, Twilley was injured after he fell from a ladder attached

---

[63] Id. at *2-3.
[64] *Id.* at *7.
[65] *See Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 783 (Tex. App. --- Texarkana 2013, pet. denied).
[66] *Twilley*, 422 S.W.3d at 783

to the hospital. In 2010, Twilley sustained a second injury after he slipped and fell on a mound of hardened cement on the hospital's premises.[67] Twilley subsequently filed suit against Good Shepherd Medical Center, asserting claims of negligence, negligence per se, premises liability and gross negligence. After the trial court denied its motion to dismiss for failure to serve an expert report, Good Shepherd Medical Center perfected an interlocutory appeal to the Texarkana Court of Appeals.

On appellate review, the Texarkana Court of Appeals recognized that the gravamen of Twilley's tort claims related to alleged OSHA violations which bear no relationship to the provision of health care services.[68] In rejecting Good Shepherd Medical Center's argument that the state of the law prior to *Ross* permitted Chapter 74 to extend to claims which have no relationship at all to health care services, which is essentially the same

---

[67] *Id.*

[68] *Id.* at 787.

_____

argument advanced by Sodexo at the trial court level, the

court noted:

> "Good Shepherd's interpretation of the law goes
> far beyond the holding in Williams and would
> render meaningless the high court's directive
> that ordinary negligence claims are
> distinguished from health care liability claims
> by focusing on the nature of the acts or
> omissions causing the alleged injuries. Said
> differently, if every safety claim against a
> health care provider were considered a health
> care liability claim, there would be no need to
> analyze the nature of the acts or omissions which
> caused the alleged injuries."[69]

The court additionally recognized the need to

interpret Chapter 74's statutory language in a reasoned

manner in order to avoid bizarre results. In particular,

the court noted that following Good Shepherd Medical

Center's argument to its logical extreme would mean that

a car accident in a hospital parking lot would constitute

a health care liability claim and require an expert

report. The court characterized such a result as absurd

and declared that a safety claim against a health care

_____

[69] *Id.* at 788.

provider must involve "a more logical, coherent nexus to health care."[70]

## D. The *Dewey*[71] Decision

Thomas Dewey was visiting his mother at Northeast Methodist Hospital when an electronic door closed on him.[72] In determining whether or not Dewey's claims fall within the scope of Chapter 74, the San Antonio Court of Appeals characterized Dewey's tort claim as a "straightforward" premises liability claim.[73] In applying the judicial litmus test for health care liability claims, the court found no relationship, direct or indirect, between the claims and health care as Dewey was not a patient at the hospital, was not seeking any form of health care treatment, was not an employee of the hospital, and was not assisted in any manner by healthcare personnel. The court characterized the nature of the duty imposed on Northeast Methodist Hospital as

---

[70] *Id.*

[71] *See Methodist Hospital System of San Antonio, Ltd. v. Dewey*, 423 S.W.3d 516 (Tex. App. --- San Antonio 2014, pet. filed).

[72] See *Dewey*, 423 S.W.3d at 516.

[73] *Id.* at 519-520.

indistinguishable from the tort duties applicable to any business which allows visitors on its premises.[74]

### E. The Pre-Ross Decisions Support Reversal of the Trial Court's Decision

Although they may be labeled as persuasive authorities in light of the new standard which was recently announced *Ross*, *Riverside General Hospital*, *Gonzalez*, *Twilley* and *Dewey* all support reversal of the trial court's decision on Sodexo's Motion to Dismiss. Being struck by a beverage cart in a common area of the hospital while retrieving a cup of coffee presents no more of a connection to the provision of health care services than falling over an extension cord, stumbling over a set of milk crates, falling from a ladder, or being struck by an electronic door. Furthermore, there is no substantive difference between the "garden variety" slip and fall claims at issue in *Riverside General Hospital* and Shah's claims. In addition, strong-arming Shah's claims into the reach of Chapter 74 despite the absence of any relationship between health care and the

---

[74] Id.

operation of a beverage cart would result in a result which is equally as bizarre as classifying a car accident in a hospital parking lot as a health care liability claim.

Although Ross recently ended the confusion which had plagued trial and intermediate courts of appeals since the Texas West Oaks Hospital decision was rendered in 2012 and there is now a bright-line standard for drawing the line of demarcation between health care liability claims and ordinary tort claims, Shah's claims clearly fall outside of the scope of Chapter 74 regardless of whether or not the Court looks to *Ross* for guidance or the state of the law prior to *Ross*.

### V. Requiring an Expert Report Would Engraft a Superfluous and Pointless Requirement Onto Shah's Negligence Claim

This Court observed in *Riverside General Hospital* that requiring an expert medical or health care report in the context of a slip and fall case would "amount to an exercise in futility."[75] This Court further noted that

---

[75] *See Riverside General Hospital*, 2014 Tex. App. LEXIS 9681 at *22.

it was improbable that Williams could have successfully located a premises liability expert who satisfied the expert report requirements of Chapter 74.[76] Even more importantly, this Court recognized that even if such an expert was available, a garden variety slip and fall claim does not require expert medical or health care testimony.[77] Similar concerns were recognized by the Texarkana Court of Appeals in *Twilley*[78] and the San Antonio Court of Appeals in *Dewey*.[79] As the court recognized in *Dewey*, professional medical judgment is not needed to determine the standard of care relative to an electric door and whether or not it was breached.[80]

The aforementioned concerns survive *Ross* and further militate against classifying Shah's claims as health care liability claims. While *Ross* did not directly speak to the fact that obtaining an expert report from a medical expert would be pointless in the context of ordinary tort

---

[76] *Id.* at 23.
[77] *Id.*
[78] *See Twilley*, 422 S.W.3d at 789.
[79] *See Dewey*, 423 S.W.3d at 520.
[80] *Id.*

_____

claims, it did note that the purpose of Chapter 74's expert report requirement is not to provide defendant health care providers with a procedural advantage under the guise of regulating health care.[81] Even if Shah could successfully locate a physician or other health care expert who had sufficient experience with the operation of beverage carts to render an expert opinion, the retention of such an expert would add nothing of significance to the case as the standard of care is readily discernable from the common law duty of reasonable care. The court should decline to burden an ordinary negligence claim with an unnecessary and meaningless expert report requirement.

While requiring Shah to obtain an expert report would provide Sodexo with an unwarranted tactical advantage, Chapter 74 was never intended to erect procedural hurdles for plaintiffs in non-medical cases. As an expert report would accomplish nothing more than the creation of such

---

[81] *See Ross*, 2015 Tex. LEXIS at *16-17.

a hurdle, the Court should reverse the trial court's ruling on the Motion to Dismiss.

**VI. In the Alternative, Sodexo Should be Equitably Estopped From Seeking Dismissal of Shah's Claims**

In the alternative and in the unlikely event that the Court classifies Shah's claims as health care liability claims such that an expert report requirement is triggered, Sodexo should be equitably estopped from seeking dismissal of Shah's claims. Shah served Requests for Disclosure on Sodexo along with his Original Petition[82] and Sodexo served responses on July 23, 2014.[83] In response to Rule 194.2(c), Sodexo made the following boilerplate allegation which omitted any reference to the expert report requirement or any other facet of Chapter 74:

> "Defendants generally deny each and every allegation made by Plaintiff and demands strict proof of the same. Defendants deny having committed any wrongdoing. Defendants deny that Plaintiff's damages are what they claim to be. In the alternative, Defendants assert the affirmative defense of comparative negligence /fault and would show that Plaintiff's claims are barred, in whole or in part, as a result of

---

[82] See CR 4-11.
[83] *Id.* at 314-321.

_____

such comparative negligence/fault. Further, in the alternative, Plaintiff's alleged injuries, if any, were exacerbated by Plaintiff's unreasonable failure to mitigate."[84]

Rule 194.2(c) requires a party to disclose its legal theories and, in general, the factual bases of its claims or defenses.[85] While the responding party is not required to marshal all evidence that may be offered at trial, the rule is intended at a minimum to require disclosure of a party's "basic assertions."[86]

A party who fails to "make, amend or supplement" a discovery response may not introduce evidence of the information which was not disclosed unless the court finds: (1) there was good cause for the failure to timely disclose; or (2) the failure to timely disclose will not unfairly prejudice the other party.[87]

Sodexo's "basic assertions" at the time it responded to Shah's Requests for Disclosure should have included

---

[84] *See* CR 316.
[85] *See* Tex. R. Civ. P. 194.2(c).
[86] *See* Tex. R. Civ. P. 192.2(c), CMT. 2; *Holland v. Friedman & Feiger*, No. 05-12-01714-CV, 2014 Tex. App. LEXIS 12892 *17-18 (Tex. App. --- Dallas 2014, no pet. h.).
[87] See Tex. R. Civ. P. 193.6(a); *Williams v. County of Dallas*, 194 S.W.3d 29, 32 (Tex. App. --- Dallas 2006, no pet.).

the fact that Sodexo considered Shah's claims to fall within the purview of Chapter 74 and that Sodexo might seek dismissal of Shah's claims in the future if an expert report was not furnished within the applicable one-hundred and twenty day period.  However, Sodexo failed to make any such disclosure and instead made a strategic decision to announce its intention to seek dismissal on the basis of the expert report requirement after the one-hundred and twenty day deadline had already expired. Sodexo's failure to make a proper disclosure was exacerbated by the fact that it did not serve any supplemental disclosure responses at any point while the case was active at the trial court level.  Sodexo's failure to honor its disclosure requirement was compounded by the fact that good cause was lacking and Shah was the victim of unfair surprise and prejudice as Shah surely would have attempted to obtain a compliant expert report if Sodexo's intentions had been disclosed during the one-hundred and twenty day period.

_____

It would stand the discovery rules on their head and defeat open disclosure to contend that Shah was entitled under Rule 194.2(c) to the fact that Sodexo might raise the affirmative defenses of comparative fault and failure to mitigate damages but was not similarly entitled to know that Sodexo might seek a complete dismissal of his claims based upon Chapter 74's expert report requirement. A party should not be allowed to selectively pick and choose which "basic assertions" it wants to disclose and which defenses it strategically wants to conceal. To hold otherwise would return the Texas courts to the days of trial by ambush which the discovery rules were expressly designed to prevent.

While Rule 193.6(a) is designed to punish a party who makes an incomplete disclosure by limiting the evidence that party is allowed to present at trial, invoking the doctrine of equitable estoppel to prevent Sodexo from seeking dismissal of Shah's claims serves the same purpose and is an analogous remedy for Sodexo's incomplete disclosure. Allowing Sodexo to strategically

wait for one-hundred and twenty days to disclose that it considered Shah's claims to be health care liability claims would render Rule 194.2(c) meaningless and would be akin to permitting trial by ambush.  Furthermore, Chapter 74 would be converted from a legitimate statute governing health care liability into a trap door that a defendant could pop open at a strategic time in order to catch an unsuspecting plaintiff who had no knowledge that an expert report was even required.  The doctrine of equitable estoppel exists to prevent such miscarriages of justice and the Court should invoke the doctrine in order to reverse the dismissal of Shah's claims by the trial court.

## **PRAYER**

WHERFORE, PREMISES CONSIDERED, Appellant Madhusudan Shah respectfully requests that the court reverse the Court's ruling dismissing his claims, and remand for further proceedings in the trial court.

_____

## **CERTIFICATE OF SERVICE**

As required by Rules 6.3and 9.5(b) – (e) of the Texas Rules of Appellate Procedure, I certify that I have served this document on all other parties – which are listed below – by the manner of service indicated below:

***Via Electronic Filing,***
***Facsimile: (713)629-5027***
***& Certified Mail - RRR***
Mr. Nelson D. Skyler
Mr. Tarush R. Anand
Mr. Neal A. Hoffman
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
*Counsel for Appellee Sodexo Services of Texas*
*Limited Partnership*

***Via Electronic Filing Only***
Mr. Arshad A. Ramji
Ramji & Associates, P.C.
2920 Virginia Street
Houston, Texas 77098
Co-Counsel for Appellant Madhusudan Shah

/s/ Kenneth R. Baird, Esq.
Kenneth R. Baird
Date: June 28, 2015

## **CERTIFICATE OF COMPLIANCE**

I, Kenneth R. Baird, lead counsel for Appellant, hereby certify that the total word count for Appellant's brief is 8,311 words which is less than the maximum of 15,000 words allowed under Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.  I relied upon Microsoft Word in order to determine the page count.

/s/ Kenneth R. Baird, Esq.
Kenneth R. Baird
Date: June 28, 2015

NO. 01-15-00141-CV

_____

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON

_____

MADHUSUDAN SHAH
APPELLANT

v.

SODEXO SERVICES OF TEXAS LIMITED PARTNERSHIP
APPELLEE

On appeal from the 55th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2014-20678

_____

APPENDIX TO THE FIRST AMENDED BRIEF OF APPELLANT
MADHUSUDAN SHAH

_____

ORAL ARGUMENT REQUESTED

Kenneth R. Baird
Lead Counsel for Appellant
Texas Bar No. 24036172
The Baird Law Firm
2323 South Voss Road, Suite 325
(713)783-1113
(281)677-4227 (facsimile)
bairdlawfirm@hotmail.com

Attorney for Madhusudan Shah

_____

**CERTIFICATE OF SERVICE**

    As required by Rules 6.3and 9.5(b) – (e) of the Texas Rules of Appellate Procedure, I certify that I have served this document, the Appendix to the First Amended Brief of Madhusudan Shah, on all other parties – which are listed below – by the manner of service indicated below:

***Via Electronic Filing,***
***Facsimile: (713)629-5027***
***& Certified Mail - RRR***
Mr. Nelson D. Skyler
Mr. Tarush R. Anand
Mr. Neal A. Hoffman
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
*Counsel for Appellee Sodexo Services of Texas*
*Limited Partnership*

***Via Electronic Filing Only***
Mr. Arshad A. Ramji
Ramji & Associates, P.C.
2920 Virginia Street
Houston, Texas 77098
Co-Counsel for Appellant Madhusudan Shah

        /s/ Kenneth R. Baird, Esq.
        Kenneth R. Baird
        Date: June 28, 2015

NO. 01-15-00141-CV

_____

**APPENDIX**

**LIST OF DOCUMENTS**

1.  Order of the 55th Judicial District Court of
    Harris County ..................................Tab A

2.  Joint Stipulation as to Appealable Order.......Tab B

3.  Order Granting Joint Motion for Extension of
    Time to File Briefs and motion to Allow
    Appellant to File an Amended Brief ............Tab C

4.  *Ross v. St. Luke's Episcopal Hospital,* No.
    13-0439, 2015 Tex. LEXIS 361 (Tex.
    5/1/15) (publication status pending)...........Tab D

5.  Tex. Civ. Prac. & Rem. Code § 74.001...........Tab E

Tab A

Cause No. 2014-20678

| | | |
|---|---|---|
| MADHUSUDAN SHAH, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SODEXO, INC.; SODEXO | § | HARRIS COUNTY, TEXAS |
| MANAGEMENT, INC.; SODEXO | § | |
| OPERATIONS, LLC; SODEXO | § | |
| SERVICES OF TEXAS LIMITED | § | |
| PARTNERSHIP; & SODEXO LAUNDRY | § | |
| SERVICES, INC. | § | |
| | § | |
| Defendants. | § | 55TH JUDICIAL DISTRICT |

## ORDER

Pending before the Court is Defendant's Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report. Having considered the issues, the Court hereby GRANTS the Motion.

It is ORDERED that the Court hereby GRANTS Defendant's Motion to Dismiss. All of Plaintiff's claims asserted herein are hereby DISMISSED with prejudice and Defendant *may be* awarded its reasonable attorneys' fees and costs. *upon proper application.*

SIGNED on this 16 day of _____ Jan. _____, 2015.

_____
The Honorable Jeff Shadwick
55th District Court, Harris County

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1

Tab B

ACCEPTED
01-15-00141-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/19/2015 11:17:50 AM
CHRISTOPHER PRINI
CLERK

NO. 01-15-00141-CV

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
OF TEXAS AT HOUSTON

MADHUSUDAN SHAH, APPELLANT

v.

SODEXO SERVICES OF TEXAS LIMITED PARTNERSHIP

On appeal from the 55th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2014-20678

JOINT STIPULATION AS TO APPEALABLE ORDER

COUNSEL FOR APPELLANT:

Kenneth R. Baird
The Baird Law Firm
2323 South Voss Road, Suite 325
Phone: (713) 783-1113
Facsimile: (281) 677-4227
bairdlawfirm@hotmail.com

COUNSEL FOR APPELLEE:

Nelson D. Skyler
Neal A. Hoffman
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
Phone: (713) 629-1580
Facsimile: (713) 629-5027
nskyler@brownsims.com
nhoffman@brownsims.com

1

## JOINT STIPULATION AS TO APPEALABLE ORDER

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

NOW COMES, Madhusudan Shah, Appellant in the above-styled and numbered cause (hereinafter "Appellant"), and Sodexo Services of Texas Limited Partnership, Appellee in the above-styled and numbered cause (hereinafter "Appellee"), appearing jointly by and through their respective counsels of record, and file their Joint Stipulation as to Appealable Order. In support thereof, Appellant and Appellee advise the Honorable Court of Appeals that they have reached the following stipulation:

Appellant and Appellee hereby stipulate that the Order on Defendant's Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report,[1] which was signed by the Honorable Jeff Shadwick of the 55th Judicial District Court of Harris County, Texas on January 16, 2015, constitutes a final, appealable order despite the fact that that it left unresolved Appellee's claim for attorney's fees and costs. Since Appellee later waived its claim for attorney's fees and costs under Chapter 74 of the Texas Civil Practice & Remedies Code and both Appellant and Appellee desire to proceed with the appeal on its current schedule so that the substantive legal issues in dispute can be resolved by the Honorable Court of Appeals, the Parties respectfully pray that the Honorable Court of Appeals accept their stipulation and treat the Order on Defendant's Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report as a final, appealable order for all purposes.

---

[1] A copy of the referenced order is attached hereto and incorporated herein for all purposes as Exhibit A.

Respectfully Submitted,

THE BAIRD LAW FIRM


/s/ Kenneth R. Baird, Esq.
Kenneth R. Baird
Texas Bar No. 24036172
2323 South Voss Road, Suite 325
Houston, Texas 77057
Phone: (713) 783-1113
Facsimile: (281) 677-4227
bairdlawfirm@hotmail.com
LEAD COUNSEL FOR APPELLANT
MADHUSUDAN SHAH


---AND---


BROWN SIMS


/s/ Neal A. Hoffman
Nelson D. Skyler
Texas Bar No. 00784982
Neal A. Hoffman
Texas Bar No. 24069936
1177 West Loop South, 10th Floor
Houston, Texas 77027
Phone: (713) 629-1580
Facsimile: (713) 629-5027
nskyler@brownsims.com
nhoffman@brownsims.com
COUNSEL FOR APPELLEE SODEXO
SERVICES OF TEXAS LIMITED
PARTNERSHIP

3

## CERTIFICATE OF CONFERENCE

As required by Rule 10.1(a)(5) of the Texas Rules of Appellate Procedure, I certify that I have conferred with all other parties – who are listed below – about the merits of this stipulation with the following results:

Neal A. Hoffman, counsel for Appellee Sodexo Services of Texas Limited Partnership, has joined in the relief sought as indicated in the signature block. As a result, the term "Joint" has been included in the style of this document.

/s/ Kenneth R. Baird, Esq.
Kenneth R. Baird
Date: March 19, 2015

## CERTIFICATE OF SERVICE

As required by Rules 6.3 and 9.5(b) – (e) of the Texas Rules of Appellate Procedure, I certify that I have served this document on all other parties – which are listed below – by the manner of service indicated below:

*Via Electronic Filing & Facsimile: (713)629-5027*
Mr. Nelson D. Skyler
Mr. Neal A. Hoffman
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
*Counsel for Appellee Sodexo Services of Texas*
*Limited Partnership*

*Via Electronic Filing Only*
Mr. Arshad A. Ramji
Ramji & Associates, P.C.
2920 Virginia Street
Houston, Texas 77098
Co-Counsel for Appellant Madhusudan Shah

/s/ Kenneth R. Baird, Esq.
Kenneth R. Baird
Date: March 19, 2015

4

12/19/2014 6:52:09 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 3556761
By: PATTON, JONATHAN R

Cause No. 2014-20678

| | | |
|---|---|---|
| MADHUSUDAN SHAH, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SODEXO, INC.; SODEXO | § | HARRIS COUNTY, TEXAS |
| MANAGEMENT, INC.; SODEXO | § | |
| OPERATIONS, LLC; SODEXO | § | |
| SERVICES OF TEXAS LIMITED | § | |
| PARTNERSHIP; & SODEXO LAUNDRY | § | |
| SERVICES, INC. | § | |
| | § | |
| Defendants. | § | 55TH JUDICIAL DISTRICT |

## ORDER

Pending before the Court is Defendant's Motion to Dismiss for Failure to Provide a Timely and Complete Chapter 74 Expert Report. Having considered the issues, the Court hereby GRANTS the Motion.

It is ORDERED that the Court hereby GRANTS Defendant's Motion to Dismiss. All of Plaintiff's claims asserted herein are hereby DISMISSED with prejudice and Defendant ~~is~~ may be awarded its reasonable attorneys' fees and costs. upon proper application.

SIGNED on this 16 day of Jan. 2015

The Honorable Jeff Shadwick
55th District Court, Harris County

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1



Tab C



ORDER

Appellate case name:     Madhusudan Shah v. Sodexo Services of Texas Limited Partnership

Appellate case number:   01-15-00141-CV

Trial court case number: 2014-20678

Trial court:             55th District Court of Harris County

The parties have filed a "Joint Motion for Extension of Time to File Briefs and Motion to Allow Appellant to File an Amended Brief." The motion is **granted**. Appellant's amended brief is ordered to be filed no later than 30 days from the date of this order. Appellee's amended brief, if any, is ordered to be filed within 30 days of the filing of appellant's amended brief.

It is so ORDERED.

Judge's signature: /s/ Michael Massengale
                    X  Acting individually     ☐  Acting for the Court

Date: May 29, 2015

FILE COPY

SHERRY RADACK
CHIEF JUSTICE

TERRY JENNINGS
EVELYN KEYES
LAURA CARTER HIGLEY
JANE BLAND
MICHAEL MASSENGALE
HARVEY BROWN
REBECA HUDDLE
RUSSELL LLOYD
JUSTICES



# Court of Appeals
# First District of Texas
**301 Fannin Street**
**Houston, Texas 77002-2066**

CHRISTOPHER A. PRINE
CLERK OF THE COURT

JANET WILLIAMS
CHIEF STAFF ATTORNEY

PHONE: 713-274-2700
FAX:    713-755-8131

www.txcourts.gov/1stcoa.aspx

Friday, May 29, 2015

Arshad Ramji
Ramji & Associates
2920 Virginia St
Houston, TX 77098-1201
* DELIVERED VIA E-MAIL *

Neal Hoffman
Brown Sims, P.C.
1177 West Loop South, 10th Fl
Houston, TX 77027
* DELIVERED VIA E-MAIL *

Kenneth Richard Baird
The Baird Law Firm
2323 South Voss Road, Suite 325
Houston, TX 77057
* DELIVERED VIA E-MAIL *

Nelson  Dean Skyler
Brown Sims P C
1177 West Loop South 10th Fl
Houston, TX 77027-9007
* DELIVERED VIA E-MAIL *

RE:    **Court of Appeals Number:** 01-15-00141-CV **Trial Court Case Number:** 2014-20678

Style: Madhusudan Shah
    v.
Sodexo, Inc.; Sodexa Management Inc., Sodexo Operations, LLC; Sodexo Services of Texas
Limited Partnership; & Sodexo Laundry Services, Inc.

On this date, an order was issued in the above-referenced cause. You may obtain a copy of the Court's order at http://www.search.txcourts.gov/CaseSearch.aspx?coa=coa01&s=c. If you have been required to provide a valid e-mail address to the Court and accept electronic service as outlined in Rule 9.1(a) and 9.4(g), a copy of this Notice of Distribution will be sent to you electronically via email.

For more information about a particular case, please visit the Court's website at http://www.txcourts.gov/1stCOA.

Sincerely,

Christopher A. Prine, Clerk of the Court

Tab D



LEZLEA ROSS, PETITIONER, v. ST. LUKE'S EPISCOPAL HOSPITAL, RESPONDENT

NO. 13-0439

SUPREME COURT OF TEXAS

*2015 Tex. LEXIS 361; 58 Tex. Sup. J. 766; 58 Tex. Sup. J. 802*

November 5, 2014, Argued
May 1, 2015, Opinion Delivered

**NOTICE:**

PUBLICATION STATUS PENDING. CONSULT STATE RULES REGARDING PRECEDENTIAL VALUE.

**PRIOR HISTORY:** [*1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS.
*Ross v. St. Luke's Episcopal Hosp., 2013 Tex. App. LEXIS 2796 (Tex. App. Houston 14th Dist., Mar. 19, 2013)*

**COUNSEL:** For The Texas Trial Lawyers Association (TTLA), Amicus Curiae: Michael G. Guajardo, Guajardo & Marks, LLP, Dallas TX; Peter M. Kelly, Kelly, Durham & Pittard, L.L.P., Houston TX.

For Ross, Lezlea, Petitioner: Harold Kenneth 'Ken' Tummel, Tummel & Casso, Edinburg TX; Sean Michael Reagan, Leyh Payne & Mallia PLLC, Houston TX.

For St. Luke's Episcopal Hospital, Respondent: Charles Creighton Carr II, Manning, Gosda & Arredondo, L.L.P., Houston TX; Elizabeth Dale Burrus, Kroger | Burrus, Houston TX; Gregory Alan Schlak, Manning, Gosda & Arredondo, L.L.P., Houston TX; Lauren Nelson, Kroger| Burrus, Houston TX; Marsha A. Bradley, Kroger | Burrus, Houston TX.

**JUDGES:** JUSTICE JOHNSON delivered the opinion of the Court. JUSTICE LEHRMANN filed a concurring opinion, in which JUSTICE DEVINE joined. JUSTICE BROWN did not participate in the decision.

**OPINION BY:** Phil Johnson

**OPINION**

In this case a visitor to St. Luke's Episcopal Hospital sued the hospital on a premises liability theory after she slipped and fell near the lobby exit doors. The issue is whether her suit is a health care liability claim under the Texas Medical Liability Act. *See* TEX. [*2] CIV. PRAC. & REM. CODE ch. 74. The trial court and court of appeals concluded that it is. We hold that it is not, because the record does not demonstrate a relationship between the safety standards she alleged the hospital breached--standards for maintaining the floor inside the lobby exit doors--and the provision of health care, other than the location of the occurrence and the hospital's status as a health care provider.

We reverse and remand to the trial court for further proceedings.

**I. Background**

Lezlea Ross accompanied a friend who was visiting a patient in St. Luke's Episcopal Hospital. Ross was leaving the hospital through the lobby when, as she approached the exit doors, she slipped and fell in an area

where the floor was being cleaned and buffed. She sued St. Luke's and Aramark Management Services, a company that contracted with the hospital to perform maintenance services, on a premises liability theory. Aramark is not a party to this appeal.

After Ross filed suit we decided *Texas West Oaks Hospital, L.P. v. Williams, 371 S.W.3d 171 (Tex. 2012)*. There we held, in part, that when a safety standards-based claim is made against a health care provider, the Texas Medical Liability Act (TMLA), TEX. CIV. PRAC. & REM. CODE ch. 74, does not require the safety [*3] standards to be directly related to the provision of health care in order for the claim to be a health care liability claim (HCLC). *Williams, 371 S.W.3d at 186*. Relying on *Williams*, the hospital asserted that Ross's claim was an HCLC and moved for dismissal of her suit because she failed to serve an expert report. *See TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b)* (requiring dismissal of an HCLC if a claimant fails to timely serve an expert report); *Williams, 371 S.W.3d at 186*.

The trial court granted the motion to dismiss. The court of appeals affirmed. *Ross v. St. Luke's Episcopal Hosp., S.W.3d , 2013 Tex. App. LEXIS 2796 (Tex. App.--Houston [14th Dist.] 2013)*. The appeals court concluded that under *Williams* it is not necessary for any connection to exist between health care and the safety standard on which a claim is based in order for the claim to come within the TMLA. *Id. at , 2013 Tex. App. LEXIS 2796*.

Ross asserts that the lower courts erred because claims based on departures from "accepted standards of safety" do not come within the provisions of the TMLA unless there is at least some connection between the standards underlying the allegedly negligent actions and the provision of health care, even if they are not *directly* related. She then argues that her claims are not HCLCs because the hospital's alleged negligence is completely unrelated to the provision of health care.

The hospital [*4] responds with three arguments. It first urges that we lack jurisdiction. *See TEX. GOV'T CODE § 22.001(a)(2), (3), (6)*. It next asserts that even if we have jurisdiction, Ross waived the issue of whether her claim is an HCLC because she failed to properly brief and urge it in the court of appeals. Third, the hospital addresses the merits by asserting that the court of appeals correctly held that a safety standards-based claim need not be related to health care to fall within the TMLA's

provisions, but in any event Ross's claims are related to accepted standards of patient safety because she fell inside the hospital.

We first address our jurisdiction. *See Rusk State Hosp. v. Black, 392 S.W.3d 88, 95 (Tex. 2012)* (noting that if a court does not have jurisdiction, its opinion addressing any issues other than its jurisdiction is advisory).

## II. Jurisdiction

*Texas Civil Practice and Remedies Code § 51.014(a)(10)* permits an appeal from an interlocutory order granting relief sought by a motion to dismiss an HCLC for failure to file an expert report. Generally, the court of appeals' judgment is final on interlocutory appeals. *See TEX. GOV'T CODE § 22.225(b)(3)*. However, we have jurisdiction if the justices of the court of appeals disagree on a question of law material to the decision, or if a court of appeals holds differently from a prior [*5] decision of another court of appeals or this Court. *Id. § 22.225(c)*.

Ross asserts that this Court has jurisdiction because the court of appeals' opinion in this case conflicts with *Good Shepherd Medical Center-Linden, Inc. v. Twilley, 422 S.W.3d 782 (Tex. App.--Texarkana 2013, pet. denied)*. In that case, Bobby Twilley, the director of plant operations for a medical center, asserted premises liability claims against his employer after he fell from a ladder and also tripped over a mound of hardened cement. *Id. at 783*. The medical center moved for dismissal under the TMLA because Twilley failed to file an expert report. *Id. at 783-84*. The trial court denied the motion and the medical center appealed, arguing that even though Twilley's claims were unrelated to the provision of health care, under *Williams* they still fell within the ambit of the TMLA. The court of appeals interpreted *Williams* as holding that a safety standards-based claim need not be directly related to the provision of health care to be an HCLC. *Id. at 789*. The court stated, however, that it did not understand *Williams* to hold that a safety standards claim falls under the TMLA when the claim is completely untethered from health care. *Id.* The appeals court concluded that at least an indirect relationship between the claim and health care is required and, because Twilley's [*6] claims did not have such a relationship, an expert report was not required. *Id. at 785*.

In this case the court of appeals held that under *Williams* "a connection between the act or omission and health care is unnecessary for purposes of determining whether Ross brings an HCLC." *Ross,    S.W.3d at  , 2013 Tex. App. LEXIS 2796.* The hospital asserts that the decision of the court of appeals and *Twilley* do not conflict. But, for purposes of our jurisdiction, one court holds differently from another when there is inconsistency in their decisions that should be clarified to remove unnecessary uncertainty in the law. TEX. GOV'T CODE § 22.001(e). As other courts of appeals have noted, *Ross* and *Twilley* are inconsistent in their interpretations of *Williams* and the TMLA, leaving uncertainty in the law regarding whether a safety standards-based claim must be related to health care. *See, e.g., Weatherford Tex. Hosp. Co. v. Smart, 423 S.W.3d 462, 467-68 (Tex. App.--Fort Worth 2014, pet. filed); DHS Mgmt. Servs., Inc. v. Castro, 435 S.W.3d 919, 922 & n.3 (Tex. App.--Dallas 2014, no pet.).* That being so, we have jurisdiction and move to the hospital's waiver claim.

### III. Waiver

The hospital argues that Ross waived any challenge to her claim being classified as an HCLC by failing to argue the point or cite relevant authority in the court of appeals. We disagree.

A brief in the court of appeals "must contain a clear and concise argument for the contentions made, [*7] with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to provide citations or argument and analysis as to an appellate issue may waive it. *See ERI Consulting Eng'rs, Inc. v. Swinnea, 318 S.W.3d 867, 880 (Tex. 2010).*

In her court of appeals brief, Ross discussed the purpose of the TMLA and asserted that classifying her claim as an HCLC would conflict with the Government Code. *See* TEX. GOV'T CODE § 311.021(3) (providing that when a statute is enacted, there is a presumption that "a just and reasonable result is intended"). The court of appeals implicitly determined that Ross's citations and argument were enough to avoid waiver because it addressed the issue. *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d 423, 427 (Tex. 2004)* (concluding that an argument in the court of appeals was not waived and noting that "we have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to

effect the purpose of a rule" (quoting *Verburgt v. Dorner, 959 S.W.2d 615, 616-17 (Tex. 1997))).* We agree with the court of appeals that Ross did not waive the issue.

### IV. Health Care Liability Claims

The merits of the appeal require us to review the lower courts' construction of the TMLA. Under such circumstances our review is *de novo, Williams, 371 S.W.3d at 177,* and our goal [*8] is to give effect to legislative intent. *Certified EMS, Inc. v. Potts, 392 S.W.3d 625, 631 (Tex. 2013).* In determining that intent we look first and foremost to the language of the statute. *City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008).* We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results. *See Tex. Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex. 2010).* Determining legislative intent requires that we consider the statute as a whole, reading all its language in context, and not reading individual provisions in isolation. *See Union Carbide Corp. v. Synatzske, 438 S.W.3d 39, 51 (Tex. 2014).*

The TMLA defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). This Court construed "safety" under the prior statute according to its common meaning as "the condition of being 'untouched by danger; not exposed to danger; secure [*9] from danger, harm or loss.'" *Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 855 (Tex. 2005)* (quoting BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). We also recognized that the Legislature's inclusion of the word "safety" in the statute expanded the statute's scope beyond what it would be if the statute only included the terms medical care and health care. *Id.* The Court

wet bathroom floor). But given that the claims were based on injuries to patients and *were* directly related to the provision of health care, we did not address the issue of whether safety standard-based claims *must* be directly related to health care in order for them to be HCLCs.

court of appeals affirmed. *Id.* We pointed out that the statutory definition of "health care" is broad ("any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement" TEX. CIV. PRAC.

accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, the claims [*13] were HCLCs regardless of whether the plaintiff alleged the defendants were liable for breach of the standards. *See Loaisiga, 379 S.W.3d at 255.* But that being so, we further explained:

> we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *see also* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . .").

*Id.* at 257. Our reasoning led to the conclusion that a patient's claim against a medical provider for assault during a medical examination is not an HCLC if the only possible relationship between the alleged improper conduct and the rendition of medical services or health care was the setting in which the conduct took place. *Id.*

In this case, the hospital advances two positions in support of the lower courts' rulings and its assertion that Ross's claim is [*14] an HCLC. First, it addresses slip and fall claims generally, and says that any slip and fall event within a hospital is directly related to health care because it necessarily is related to the safety of patients. Second, it focuses on Ross's claim specifically and argues that her claim is related to health care because she alleges the hospital breached standards applicable to maintaining a safe environment for patients. We disagree with both positions.

As to the hospital's first contention, even though the claims in *Loaisiga* were by a patient and the nature of the claims differ from Ross's safety standards-based claim, the principle we explicated there applies here. A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. *See Loaisiga, 379 S.W.3d at 257.*

As to its second contention, Ross alleged that the hospital failed to exercise reasonable care in making the floor safe. The standards Ross says the hospital breached regarding maintenance of its floor may be the same as the hospital's standards for maintaining a safe environment in patient care areas--but those may [*15] also be the same standards many businesses generally have for maintaining their floors. And the hospital does not claim, nor does the record show, that the area where Ross fell was a patient care area or an area where patients possibly would be in the course of the hospital's providing health care services to them. Nor does the hospital reference support in the record for the position that the area had to meet particular cleanliness or maintenance standards related to the provision of health care or patient safety. *See Ollie, 342 S.W.3d at 527* ("[S]ervices a hospital provides its patients necessarily include those services required to meet patients' fundamental needs such as cleanliness . . . and safety."). Which leads to the question of whether Ross's claims are nevertheless HCLCs, as the hospital would have us hold.

The TMLA does not specifically state that a safety standards-based claim falls within its provisions only if the claim has some relationship to the provision of health care other than the location of the occurrence, the status of the defendant, or both. But the Legislature must have intended such a relationship to be necessary, given the legislative intent explicitly set out in the TMLA and the context [*16] in which "safety" is used in the statute. We said as much in *Loaisiga. 379 S.W.3d at 257.* Even though the statute's phrase "directly related to health care" does not modify its reference to safety standards, that reference occurs within a specific context, which defines an HCLC to be "a cause of action against a health care provider or physician for [a] treatment, [b] lack of treatment, [c] or other claimed departure from accepted standards of medical care, or health care, or safety." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Where the more specific items, [a] and [b], are followed by a catchall "other," [c], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former.[1] And here, the catchall "other" itself refers to standards of "medical care" or "health care" or "safety." Considering the purpose of the statute, the context of the language at issue, and the rule of *ejusdem generis*, we conclude that the safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care. And if it were not so, the broad meaning of "safety" would afford

the floor near the exit doors was for the purpose of protecting patients. Nor does the record reflect that the area where Ross fell was one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by the condition of the floor at that location. Ross was not seeking or receiving health care, nor was she a health care provider or assisting in providing health care at the time she fell. There is no evidence the negligence alleged by Ross was based on safety standards arising from professional duties owed by the hospital as a health care provider. There is also no evidence that the equipment or materials used to clean and buff the floor were particularly suited to providing for the safety of patients, nor does the record demonstrate that the cleaning and buffing of the floor near [*21] the exit doors was to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority.

**V. Conclusion**

Under this record Ross's claim is based on safety standards that have no substantive relationship to the hospital's providing of health care, so it is not an HCLC. Because her claim is not an HCLC, she was not required to serve an expert report to avoid dismissal of her suit. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

Phil Johnson Justice

**OPINION DELIVERED:** May 1, 2015

**CONCUR BY:** Debra H. Lehrmann

**CONCUR**

JUSTICE LEHRMANN, joined by JUSTICE DEVINE, concurring.

I join the Court's opinion and agree that the claims asserted in this case have no connection to the provision of health care. I write separately, however, to emphasize my concern that a statute intended to address the insurance crisis stemming from the volume of frivolous medical-malpractice lawsuits has become a nebulous barrier to what were once ordinary negligence suits brought by plaintiffs alleging no breach of any professional duty of care.

In *Texas West Oaks Hospital, LP v. Williams*, the

Court held that a plaintiff's claim against [*22] a physician or health care provider may constitute a health care liability claim subject to the Texas Medical Liability Act even where no patient--physician or patient--health-care-provider relationship exists between the parties. *371 S.W.3d 171, 177-78 (Tex. 2012)*. In my dissent in that case, I disagreed with the Court's holding "that the mere peripheral involvement of a patient transforms an ordinary negligence claim into a health care claim." *Id. at 194-95* (Lehrmann, J., dissenting). I lamented what I viewed as the Court's departure from the importance we had previously placed on the relationship between health care providers and their patients in concluding that a patient's claims were covered by the Act. *Id. at 196-97* (citing *Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005))*. The consequences of that departure are evident in cases like this, in which defendants who happen to be health care providers seek the protections of the Medical Liability Act with respect to claims that have nothing to do with medical liability.

The Court holds, and I agree, that a cause of action against a health care provider for a departure from safety standards is a health care liability claim only if it has a "substantive relationship" with the provision of medical or health care.[2]    S.W.3d at    . I write separately to emphasize [*23] the significance of the third and fifth factors, which consider whether the claimant was in the process of seeking or receiving health care at the time of the injury and whether the alleged negligence was based on safety standards arising from professional duties owed by the health care provider.

> 2    "Substantive" is defined as "considerable in amount or numbers: substantial." WEBSTER'S THIRD NEW INT'L DICTIONARY 2280 (2002).

As we recognized in *Diversicare*, the duty of care that health care providers owe to their patients is fundamentally different from the duty of care owed to, say, employees or visitors. *185 S.W.3d at 850-51* ("The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees."). To that end, when we held in *Diversicare* that a nursing home resident's claim that she was sexually assaulted by another resident was a health care liability claim, we rejected the argument that the claim should be treated the same as that of a visitor who had been assaulted at the facility precisely because of the distinct nature of those duties. *Id.* We also distinguished the

circumstances at issue in that case from hypothetical claims involving an "unlocked [*24] window that gave an intruder access to the facility" and a "rickety staircase that gave way," which we implied would not constitute health care liability claims. *Id. at 854.* These statements are consistent with our recognition that health care liability claims involve a "specialized standard of care" that is established by expert testimony. *Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 546 (Tex. 2004); see also Jackson v. Axelrad, 221 S.W.3d 650, 655 (Tex. 2007)* (explaining that a physician's duty of care owed to a patient is that of "a reasonable and prudent member of the medical profession . . . under the same or similar circumstances" (quoting *Hood v. Phillips, 554 S.W.2d 160, 165 (Tex. 1977)))*.

In my view, focusing a safety-standards claim on the duty health care providers owe to their patients ensures that *Diversicare*'s hypothetical visitor-assault and rickety-staircase claims do not fall under the Medical Liability Act's umbrella. It also ensures that a covered cause of action will "implicate[] the provision of medical or health care" in accordance with the Court's holding in this case.    S.W.3d at    . With these considerations in mind, I respectfully join the Court's opinion and judgment.

Debra H. Lehrmann

Justice

**OPINION DELIVERED:** May 1, 2015

Tab E

CIVIL PRACTICE AND REMEDIES CODE

TITLE 4. LIABILITY IN TORT

CHAPTER 74. MEDICAL LIABILITY

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 74.001. DEFINITIONS. (a) In this chapter:

(1) "Affiliate" means a person who, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a specified person, including any direct or indirect parent or subsidiary.

(2) "Claimant" means a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant.

(3) "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the person, whether through ownership of equity or securities, by contract, or otherwise.

(4) "Court" means any federal or state court.

(5) "Disclosure panel" means the Texas Medical Disclosure Panel.

(6) "Economic damages" has the meaning assigned by Section 41.001.

(7) "Emergency medical care" means bona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.

(8)   "Emergency medical services provider" means a licensed public or private provider to which Chapter 773, Health and Safety Code, applies.

(9)   "Gross negligence" has the meaning assigned by Section 41.001.

(10)   "Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

(11)   "Health care institution" includes:

(A)   an ambulatory surgical center;

(B)   an assisted living facility licensed under Chapter 247, Health and Safety Code;

(C)   an emergency medical services provider;

(D)   a health services district created under Chapter 287, Health and Safety Code;

(E)   a home and community support services agency;

(F)   a hospice;

(G)   a hospital;

(H)   a hospital system;

(I)   an intermediate care facility for the mentally retarded or a home and community-based services waiver program for persons with mental retardation adopted in accordance with Section 1915(c) of the federal Social Security Act (42 U.S.C. Section 1396n), as amended;

(J)   a nursing home;   or

(K)   an end stage renal disease facility licensed under Section 251.011, Health and Safety Code.

(12)(A) "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including:

(i)   a registered nurse;

(ii)   a dentist;

(iii)   a podiatrist;

(iv)   a pharmacist;

(v)   a chiropractor;

(vi)   an optometrist;

(vii)   a health care institution;   or

(viii)   a health care collaborative certified under Chapter 848, Insurance Code.

(B)   The term includes:

(i)   an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician;   and

(ii)   an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship.

(13)   "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

(14)   "Home and community support services agency" means a licensed public or provider agency to which Chapter 142, Health and Safety Code, applies.

(15)   "Hospice" means a hospice facility or activity to which Chapter 142, Health and Safety Code, applies.

(16)   "Hospital" means a licensed public or private institution as defined in Chapter 241, Health and Safety Code, or licensed under Chapter 577, Health and Safety Code.

(17)   "Hospital system" means a system of hospitals located in this state that are under the common governance or control of a corporate parent.

(18)   "Intermediate care facility for the mentally retarded" means a licensed public or private institution to which Chapter 252, Health and Safety Code, applies.

(19)   "Medical care" means any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

(20)   "Noneconomic damages" has the meaning assigned by Section 41.001.

(21)  "Nursing home" means a licensed public or private institution to which Chapter 242, Health and Safety Code, applies.

(22)  "Pharmacist" means one licensed under Chapter 551, Occupations Code, who, for the purposes of this chapter, performs those activities limited to the dispensing of prescription medicines which result in health care liability claims and does not include any other cause of action that may exist at common law against them, including but not limited to causes of action for the sale of mishandled or defective products.

(23)  "Physician" means:

(A)  an individual licensed to practice medicine in this state;

(B)  a professional association organized under the Texas Professional Association Act (Article 1528f, Vernon's Texas Civil Statutes) by an individual physician or group of physicians;

(C)  a partnership or limited liability partnership formed by a group of physicians;

(D)  a nonprofit health corporation certified under Section 162.001, Occupations Code;  or

(E)  a company formed by a group of physicians under the Texas Limited Liability Company Act (Article 1528n, Vernon's Texas Civil Statutes).

(24)  "Professional or administrative services" means those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs.

(25)  "Representative" means the spouse, parent, guardian, trustee, authorized attorney, or other authorized legal agent of the patient or claimant.

(b)  Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law.

Added by Acts 2003, 78th Leg., ch. 204, Sec. 10.01, eff. Sept. 1, 2003.
Amended by:

Acts 2011, 82nd Leg., 1st C.S., Ch. 7 (S.B. 7), Sec. 4.02, eff. September 1, 2011